[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This fully contested dissolution of marriage action, having a return date of July 11, 2000, was heard on August 6 and 7, 2001. The parties CT Page 11359 were married on July 31, 1983 in Berkeley, California. There are two minor children issue of the marriage, Robert F. Ford, III born November 30, 1987 and Sarah Ford born November 19, 1992. No other children have been born to the wife since the date of the marriage and neither party has been the recipient of public assistance. The marriage has broken down irretrievably without prospect for reconciliation and it is ordered dissolved on the grounds of irretrievable breakdown.
The parties, to their credit, by stipulation dated July 9, 2001, have agreed to the issuance of certain financial and property orders and an order regarding their son Robert, referred to by the parties and hereafter as Robin. Those agreed upon orders are contained in the orders section of this memorandum. The court limits its findings to those that are necessary to decide the unresolved issues.
The plaintiff wife is forty years of age and she is in good health. She has a bachelor degree and has completed two-thirds of the courses for a master degree. She is presently employed as a music teacher in the Guilford school system, as a choir director for a church, and she teaches private music lessons. Her financial affidavit shows total net income of $711 per week. She has recently moved to Guilford where she and the children live in the home owned by her fiancé, Peter Johnson. From 1990, until their separation in June 2000, the parties resided in the family home in East Haven. From the time their parents separated, Robin and Sarah have lived with their mother.
The defendant husband is forty-five years of age and he is in good health. He has a doctorate degree in music and is presently employed as a cataloger at Nutmeg stamp sales in Danbury, and as a church musician. His financial affidavit shows total net income of $895 per week. He presently lives in an apartment in East Haven that is suitable for the needs of the children. The plaintiff has the children with him on alternate weekends, Friday night thru Sunday night, Wednesday evenings, and overnight on Thursdays.
The parties have agreed that they shall have joint legal custody of both children and that Robin's primary residence shall be with his mother; the primary residence of Sarah is at issue.
Robin is thirteen and is going into the ninth grade at Guilford High School. He is a very bright student and a talented musician. He previously attended East Haven Academy. He has expressed a desire to live with his mother and both parties agree it is in his best interest to do so. Robin has a very close and warm relationship with his sister Sarah.
Sarah is eight years old and is going into fourth grade; she, like her CT Page 11360 brother, is very bright and is a talented musician. Sarah spent the third grade at East Haven Academy which is a school for talented and gifted children. She cannot continue to attend the Academy if she does not reside in East Haven. Sarah has expressed a desire to live with her father in East Haven and her court-appointed attorney has submitted a proposed order to that effect. Sarah has a very close and warm relationship with her brother Robin.
The parties deeply love their children and each has stated in an articulate, rational and heartfelt manner the reasons why Sarah should live with them. They both could provide a loving and suitable home for her.
When making a custody determination pursuant to General Statutes § 46-56 (b) "the court shall (1) be guided by the best interest of the child". In determining what is in the present best interest of Sarah the court is guided by the language of our Supreme Court in the case ofCappetta v. Cappetta, 196 Conn. 10, (1985). "The award of custody requires the trial court to make difficult and sensitive inquiries into the relationships between adults and children. In the search for an appropriate custodial placement, the primary focus of the court is the best interest of the child the child's interest in sustained growth,development, well being, and in the continuity and stability of itsenvironment." (Emphasis supplied.) Id. 16
The court concludes that it is in Sarah's best interest for her to continue to reside with her mother. The court finds that the plaintiff has been the primary care-giver for the children. Both parties have worked full time while raising their children, however, the court concludes that Mrs. Ford has more often tended to their day to day needs than Mr. Ford has. In the years prior to the separation, Mr. Ford chose to devote an inordinate amount of time to his collections of records, tropical fish and stamps, rather than be with his children.
The court also believes that the continuity and stability provided to Sarah by residing with her mother, and her brother Robin, is in her best interest. According to the parties, Mr. Forsier of Family Services, and Ms. Olster, the school social worker, these two special children share a special and close relationship.
When the court deliberated on what residential setting was in Sarah's best interest it considered each of the four reasons Mr. Ford advanced why Sarah should live with him. First, he believes Sarah wants to live with him. The court accepts that Sarah has told the parties and her attorney that she wants to live with Mr. Ford. Under General Statutes § 46b-56 (b) the court shall "giv[e] consideration to the wishes of CT Page 11361 the child if the child is of sufficient age and capable of forming an intelligent preference". In view of the fact that Sarah is a very intelligent and gifted child, and because she has expressed a preference through her attorney, the court decided to consider her wishes. Sarah's wishes, however, are not dispositive of the outcome here. After considering the wishes of this eight year old, and all the other evidence in this case, the court came to the conclusion that it was in Sarah's best interest for her to remain with her mother and brother.
The second reason given by Mr. Ford is that he could provide a stable home for Sarah, and, his parenting could better provide for her needs. Implicit in this reason is the suggestion that the plaintiff's home is not stable. The only reason the court can discern for this suggested instability is the presence of Mr. Johnson, the plaintiff's fiancé. There was not sufficient evidence produced for the court to conclude that the plaintiff's home lacks stability. The family relations report indicates that the children speak fondly of Mr. Johnson and the report contains a recommendation that the primary residence of both children be with the plaintiff. The plaintiff and Mr. Johnson have been together for over a year.
It is apparent that a large amount of the time the defendant spends with his children is devoted to prearranged and scheduled activities that the children enjoy. It is also apparent that the defendant's interest in providing such activities arose after the parties separated. Prior to the separation the defendant devoted much of his time to his collection activities, at the expense of spending time with his children. Considering all of the evidence, the court is not persuaded that the defendant's parenting style justifies a change in Sarah's residence.
The defendant believes that one of Sarah's needs is for her to attend East Haven Academy. This school is specially designed for talented and gifted children and Sarah did well there last year. Sarah and the Academy may be a perfect match, however, the school Sarah attends is only a part of her surroundings. The court concludes that the stability and continuity of Sarah's environment that is sustained by her living with her brother and mother are of greater consequence than her attendance at the Academy.
The third reason given by Mr. Ford are his concerns about Mrs. Ford; specifically he believes she places her interests above that of her children. He states that she is not a "hands on" parent because she, leaves the children alone, takes naps, and has Robin take care of his sister. He also believes she has taken unilateral action on matters concerning the children without consulting him. In essence, Mr. Ford believes he should have been informed by the plaintiff of the significant CT Page 11362 events in her relationship with Mr. Jobnson, such as when Mr. Johnson began spending the night at her home, before she told the children of them. The court has considered the concerns raised by the defendant and does not find that they justify a change in Sarah's primary residence. The court notes that the defendant agreed that the primary residence of his son Robin would remain with the plaintiff.
In this case both parties have displayed poor judgement in certain areas. The defendant, because of his compulsive collecting habits, burdened the family with debt. The plaintiff, embarked on a relationship with Mr. Johnson at a time when the children were first experiencing the loss of their father's daily presence; this obviously had an effect upon them. Each party points to the behavior of the other. The court concludes, after considering all of the evidence pertaining to the parties, neither is disqualified as a custodial parent.
The fourth and final reason given by the defendant is his concern about Sarah's relationship with her mother. He believes that Sarah resents, or will resent, Mrs. Ford because of her relationship with Mr. Johnson. The defendant's concern is not supported by the evidence and cannot be the basis for a change in Sarah's primary residence.
The amended child support guideline worksheet prepared by plaintiff's counsel shows a recommended support order of $235 per week. The court finds there exist the special circumstances of shared physical custody which warrant a deviation from the recommended support amount. Under the visitation order, during a four-week period the defendant may provide as many as fourteen evening meals for the children. This will substantially increase the defendant's and substantially decrease the plaintiff's expenses for the children. The child support ordered, $180 per week, will provide the plaintiff with sufficient funds to meet the basic needs of the children.
The parties have submitted differing proposed orders regarding life insurance. The plaintiff has a policy of $38,900, as shown on her financial affidavit, and the defendant on his financial affidavit shows two policies with a total face amount of $141,000. The court does not have sufficient evidence before it to create a proper foundation for an order for the plaintiff to obtain additional insurance. See Quindazzi v.Quindazzi, 56 Conn. App. 336 (2000).
The plaintiff is the custodian of certain custodial accounts, for the benefit of the children, which were funded by the plaintiff's grandmother. Sometime in 2000 the defendant removed $5000 from Robin's account and did not tell the plaintiff. He subsequently returned the money, however, there are tax returns and taxes due because of the CT Page 11363 defendant's actions. These matters are addressed in the court's orders.
Having considered the parties stipulated proposed orders and the provisions of General Statutes § 46b-81 regarding assignment of property, § 46b-82 regarding alimony, § 46b-56 regarding custody and § 46b-56a regarding joint custody, the court enters the following orders:
 ORDERS 1. The parties shall have joint legal custody of their minor children, Robert and Sarah with primary physical residence of both children with their mother.
 2. The father shall have parenting time with the minor children every other weekend (Friday at 6:00 p.m. until Sunday at 8:00 p.m.), dinner Wednesday nights (4:00 p.m. till 8:00 p.m.) and over overnight every Thursday (6:00 p.m. and father takes the children to school on Friday morning and when school is not in session to the mother's home by 9:00 a.m.). The parties will alternate all major holidays. Each parent shall be entitled to two weeks exclusive summer vacation with the children. They shall provide notice to the other of their summer vacation schedule no later than April 1.
 3. The defendant shall pay child support in the amount of $180 per week. Each parent shall claim one of the minor children as tax exemptions until such time as Robert reaches majority and then the exemption will be alternated with the defendant having the first alternating year.
 4. The plaintiff shall provide health insurance for the benefit of the minor children with all unreimbursed and/or uncovered expenses to be shared by the parties pursuant to the Connecticut Child Support Guidelines.
5. Neither party will pay alimony to the other.
 6. The family home shall be listed for sale immediately and sold as soon as possible and the net proceeds distributed equally between the parties. From the gross proceeds of sale shall be deducted any broker's commission, reasonable attorneys' fees in connection with the sale, and the balance due on the existing first mortgage.
 7. The total amount of each party's current retirement plans' including the husband's TIAA/CREFF and the wife's Teacher's Defined Benefit Plan and her TIAA/CREFF, shall be calculated as of the day of CT Page 11364 judgment and added together and divided equally between the parties within 90 days within of the date of judgment. The court shall retain jurisdiction to enter any necessary qualified domestic relations orders.
 8. Defendant shall retain his professional books, recordings, music and stamp collection. All other items of personal property acquired by the parties during the marriage will be divided between them by mutual agreement. In the event they are unable to reach an agreement they will refer the matter to the Family Relations Office of the Superior Court for mediation. In the event no resolution is reached through that process, the determination will be made by the court which retains jurisdiction to address the issue.
 9. The defendant will pay the liabilities shown on his financial affidavit and the plaintiff will pay the liabilities shown on her financial affidavit, except those which may be included on the defendant's financial affidavit. The defendant is to hold the plaintiff harmless from any liability arising out of the debts he is ordered to pay. The plaintiff is to hold the defendant harmless for any debts that she is ordered to pay.
 10. The defendant within 30 days will return to the plaintiff all of the children's financial information, documents and records to include but not limited to, stock certificates and records, mutual fund records, savings bonds, etc. The plaintiff will remain the custodian of all of the children's accounts and investments. If the defendant is the custodian of any of the children's accounts and/or investments such custodianship shall be transferred to the plaintiff within 30 days. The plaintiff is to furnish the defendant with copies and statements of such custodian accounts on a yearly basis. As part of their joint custody obligations the parties should discuss any expenditures from the custodian accounts; however, the plaintiff shall have the final decision making authority with regard to expenditures from the custodian accounts.
 11. The defendant will pay any and all federal and state income tax liability including any penalties and/or interest charges incurred by the minor child Robert Ford for the year 2000 due to the defendant's sale of the minor child's securities within ninety days. The defendant shall indemnify and hold the plaintiff harmless with respect to such tax liability on behalf of the minor child and he is ordered to reimburse the plaintiff the estimated tax she has already paid for said minor child in the amount of $500 within ninety days.
CT Page 11365
 12. The defendant shall maintain the $141,000 of life insurance that is presently in effect and he shall name the two minor children as irrevocable beneficiaries until the youngest child attains the age of twenty-one. The plaintiff shall maintain the $38,900 in life insurance presently in effect and will name the two minor children as irrevocable beneficiaries until the youngest child attains the age of twenty-one.
Domnarski, J.